IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


ROY W. ROGERS, JR.                                                      PLAINTIFF

      v.                        Civil No. 2:21-cv-02150-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                          DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Roy W. Rogers, Jr., brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (the "Commissioner")

denying his claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A).  In this judicial

review, the Court must determine whether there is substantial evidence in the administrative record

to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.      Procedural Background

Plaintiff filed his application for benefits on January 4, 2019, alleging disability beginning

January 27, 2018, due to blindness in his left eye, glaucoma, heart attack, abnormalities in the

heart, tubal shunt in the right eye, and swelling in the feet.  (ECF No. 12, pp. 12-24, 181).  Plaintiff

was 47 years old on the alleged disability date, has a limited education, and is unable to perform

any past relevant work.  (*Id*., p. 28).  His application was denied initially and on reconsideration.

(*Id*., pp. 17, 106-108, 110-111).  At Plaintiff's request, an Administrative Law Judge ("ALJ"),

Elisabeth McGee, held an administrative hearing on June 8, 2020, via telephone due to the

extraordinary circumstance presented by the COVID-19 pandemic. (*Id.*, pp. 35-70). Plaintiff was present and represented by counsel.

On September 3, 2020, the ALJ concluded that Plaintiff's severe glaucoma, right eye with tube stent and moderate visual field loss, left eye with almost total visual field loss, depressive disorder, and anxiety disorder were severe, but she concluded these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (ECF No. 12, pp. 14-15). She found Plaintiff capable of performing:

> light work as defined in 20 C.F.R. § 404.1567(a) except he can frequently bend, stoop, and crawl. Due to loss of vision in the left eye, he is limited to no moving mechanical parts from the left. The claimant is limited to no jobs requiring the use of both eyes or excellent vision and no bright light or sunshine. He can perform simple, routine, repetitive tasks and make simple work-related decisions. (*Id.*, pp. 17-21).

With the assistance of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work as a collator operator, DOT 208.685-101, which is classified as light, unskilled work, and of which there are 46,849 jobs in the national economy; a photo copy machine operator, DOT 207.685-014, which is classified as light, unskilled work, and of which there are 10,381 jobs in the national economy; and an office helper, DOT 239.567-101, which is classified as light, unskilled work, and of which there are 13,843 jobs in the national economy. (*Id.*, p. 29). Plaintiff was found not to be under a disability from his alleged onset date through the date of the ALJ's decision. (*Id.*).

The Appeals Council denied Plaintiff's request for review on July 22, 2021. (ECF No. 12, pp. 6-10). Plaintiff then filed his Complaint to initiate this action on September 21, 2021. (ECF No. 2). This matter is before the undersigned for report and recommendation. Both parties have filed appeal briefs (ECF Nos. 15, 16), and the case is ready for decision.

## II.      Relevant Evidence

The undersigned has conducted a thorough review of the entire record in this case.  Because Plaintiff's appeal primarily concerns whether his visual impairments prevent him from a limited range of light work, the undersigned will only recount the evidence relevant to that claim.

The 1,022-page record in this case includes objective medical evidence and treatment notes, opinion evidence, and Plaintiff's subjective statements to the Agency regarding his limitations.  The relevant medical evidence demonstrates a history of eye impairments requiring surgeries and medications followed by conservative and effective treatment modalities for Plaintiff's symptoms.  In October 2018, Plaintiff sought treatment with Steven Vold, M.D., for decreased vision, left eye more than the right, and unclear vision especially when reading, watching television, looking at a computer, and driving.  (ECF No. 12, pp. 389-407).

Dr. Vold noted Plaintiff's history of glaucoma in both eyes; trabeculectomies with an antifibrotic agent in the left eye; tube shunt placement, patch graft, and complex phacoemulsification with PCIOL in the right eye; and an yttrium-aluminum-garnet laser capsulotomy of the right eye.  (*Id.*, p. 389).  Dr. Vold noted a gap in treatment of 23 months despite this eventful medical history.  (*Id.*).  Plaintiff reported general compliance with ocular prescriptions for brinzolamide, Lumigan, and dorzolamide.  (*Id.*).  He explained that some of the medications caused itching and redness of his eye lids.  (*Id.*).  Testing showed severe stage primary open-angle glaucoma of both eyes, pseudophakia in the right eye, and cortical cataract in the left eye.  (*Id.*, p. 407).  As to his treatment plan, Plaintiff's medications were adjusted in response to the reported side effects, and Dr. Vold emphasized the importance of improved medical compliance and follow-up.  (*Id.*).

Plaintiff sought treatment with Dr. Vold again in August 2019, reporting difficulty seeing in dim lighting, difficulty with glare, poor peripheral vision, and progressive loss of vision. (ECF No. 12, pp. 776-779). Dr. Vold noted that he last saw Plaintiff approximately nine months prior and assessed Plaintiff with severe stage open-angle glaucoma of both eyes, dermatochalasis of both upper eyelids, pseudophakia of the right eye, and symptomatic cortical cataract of the left eye. (*Id*., p. 779). Plaintiff stated that he was only generally compliant with his glaucoma medication, but explained that he had problems tolerating some of them. (*Id*., p. 776). Dr. Vold adjusted Plaintiff's medications and discussed the risks and benefits of surgery, namely phacoemulsification with goniotomy of the left eye. (*Id*.). Plaintiff understood and wished to proceed with surgery. (*Id*.).

Eight days after surgery, Plaintiff described good, fairly stable vision and complained of no issues. (ECF No. 12, pp. 783-785). He stated that he always used his medications as directed. (*Id*.). Throughout September and October 2019, Plaintiff continued to report good, fairly stable vision and claimed to use his medications as directed. (*Id*., pp. 786-797).

When Plaintiff complained of photophobia and poor vision in November 2019, he also admitted to never using his medications as directed. (ECF No. 12, pp. 883-889). Plaintiff's only ocular medication at this point was netarsudil-latanoprost, which he was instructed to administer by dropping one drop into both eyes at bedtime. (*Id*., p. 883). Examination and testing remained consistent with primary open-angle glaucoma with central corneal thickness within normal limits. (*Id*., pp. 884-889). Dr. Vold continued Plaintiff's medication. (*Id*., p. 889).

Ten weeks later, in January 2020, Plaintiff returned to Dr. Vold with complaints of burning and stinging when using the prescribed eye drops. (ECF No. 12, pp. 890-892). He reported being very compliant with his medication but was moderately bothered by the side effects that occurred

every time he used the drops. (*Id.*, p. 890). Examination and testing showed severe stage primary open-angle glaucoma in both eyes, dermatochalasis of both upper eyelids, and pseudophakia of both eyes. (*Id.*, p. 892). Dr Vold discussed the risks and benefits of selective laser trabeculoplasty of the right eye, and Plaintiff stated that he wished to proceed with it. (*Id.*). Plaintiff followed up 14 days after the laser trabeculoplasty, which proceeded with no complications, and he reported good, fairly stable vision despite dryness. (*Id.*, pp. 892-895). He claimed that he usually used his medications as directed. (*Id.*, p. 893).

The relevant opinion evidence demonstrates some work-related limitations based on Plaintiff's ocular impairments as assessed by examining and treating medical sources. State agency medical consultants assessed Plaintiff with the capacity for medium-level work based on medically determinable impairments of CAD and glaucoma in May and July 2019. (ECF No. 12, pp. 79-81, 95-96).

Dr. Vold completed a medical source statement regarding Plaintiff's work-related limitations in November 2018, based on diagnoses of primary open angle glaucoma and cortical cataract. (ECF No. 12, pp. 597-598). He stated that he first treated Plaintiff in March 2015, but that Plaintiff's medical condition had not prevented him from working the past 12 months nor was it reasonably expected to last the next 12 months. (*Id.* p. 597). Plaintiff could continuously lift and carry up to 10 lbs., climb, reach above his head, stoop, crouch, and kneel. (*Id.* pp. 597-598). He could continuously be exposed to unprotected heights, marked temperature changes, and noise. (*Id.*, p. 598). He could frequently bend, squat, crawl, be around moving machinery, and drive automotive equipment. (*Id.*). He could occasionally be exposed to dust, fumes, and gases. (*Id.*). Dr. Vold did not assess Plaintiff with any additional limitations. (*Id.*).

Plaintiff also presented for consultative examinations with Blake N. Geren, M.D., in June 2018 and May 2019. (ECF No. 12, pp. 368-369, 445-447). In June 2018, Dr. Geren initially noted Plaintiff's significant past ocular history for severe primary open angle glaucoma bilaterally status post trabeculectomy bilaterally, tube shunt procedure in the right eye, and cataract surgery on the right eye. (*Id*., pp. 368-369). Plaintiff had 20/200 visual acuity in his left eye but 20/30 visual acuity in his right eye. (*Id*., p. 368). Dr. Geren noted that Plaintiff had significant vision loss from glaucoma in both eyes and stated that he should follow up with Dr. Vold within a few weeks for additional treatments. (*Id*.). Dr. Geren did not assess Plaintiff's work-related limitations.

In May 2019, Dr. Geren assessed Plaintiff's best corrected visual acuity as 20/30 in the right eye and hand motion in the left eye. (ECF No. 12, pp. 445-447). Plaintiff had severe glaucoma in both eyes with moderate visual field loss in the right eye and almost total visual field loss in the left eye. (*Id*.). The left eye also had very poor central vision, but the right eye had good central vision. Plaintiff's intraocular pressure was stable bilaterally with medication. (*Id*.). Dr. Geren did not provide an assessment of work-related limitations.

In his statements to the Agency, Plaintiff alleged, inter alia, disability based on blindness in his left eye, glaucoma, and tubal shunt in the right eye. (ECF No. 12, p. 181). He reported that he stopped working as a welder in January 2018 due to his conditions. (*Id*., p. 182). His daily activities included taking his medications, sitting at home, and visiting with his daughter. (*Id*., p. 214). He could do laundry, fold clothes, and dust the counters. (*Id*., p. 216). He could complete his personal care, but he required help in the shower as he could not read the labels of shampoo and conditioner bottles. (*Id*., p. 215). He could drive sometimes, but his wife usually did most of the driving. (*Id*., p. 217). Though he tripped while walking because of vision problems, including

sensitivity to sunlight and other bright lights, he could walk with his wife and son to their son's school, which was an approximately 10-minute walk around the corner.  (*Id.*, pp. 240, 243).

### III.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014).  If there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). The fact finder only considers a plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. § 404.1520(a)(4)(v).

## IV.    Discussion

Plaintiff raises five issues on appeal: (1) whether the ALJ developed a reasonably complete record; (2) whether the ALJ properly found Plaintiff's visual impairments did not meet or equal a listing; (3) whether substantial evidence supports the ALJ's physical RFC finding; (4) whether substantial evidence supports the ALJ's mental RFC finding; and (5), whether the ALJ properly evaluated Plaintiff's alleged subjective symptoms. After thoroughly reviewing the record, the undersigned finds that the ALJ developed a reasonably complete record, properly found Plaintiff's visual impairments did not meet or equal a listing, determined Plaintiff's physical and mental RFC findings based on substantial evidence, and properly evaluated Plaintiff's subjective complaints.

### A.    The ALJ developed a reasonably complete record.

Plaintiff contends that the ALJ failed to fully and fairly develop the record, arguing that the opinion evidence contained a disparity regarding Plaintiff's visual limitations and related lifting limitations, and that the examiner opinions did not properly assess how Plaintiff's limitations translated in the workplace. (ECF No. 15, pp. 9-10). Plaintiff argues that the ALJ

should have sought further clarification from Plaintiff's treating ophthalmologist to resolve the alleged disparity and that the ALJ should have consulted a medical expert to assess Plaintiff's limitations in the workplace.  (*Id*.).

While the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts, the ALJ is only required to develop a reasonably complete record.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *see also Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citing *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)).  While "[a]n ALJ should recontact a treating or consulting physician if a critical issue is undeveloped," "the ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."  *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

Here, the record contains sufficient medical evidence from which the ALJ could determine whether Plaintiff was disabled.  A review of the treatment record demonstrates diagnoses of eye impairments requiring surgeries and medications, but it does not support the level of alleged loss of functioning Plaintiff claims.  Rather, treatment providers noted lengthy gaps in medical care and irregular compliance with medication recommendations.  Despite these obstacles, treatment notes indicate conservative medication generally controlled Plaintiff's symptoms when he followed medical recommendations.

Prior to the relevant period, Plaintiff underwent multiple eye surgeries, including placement of a tubal shunt in his right eye.  Dr. Vold not only performed these surgeries but oversaw Plaintiff's recovery and addressed additional treatment needed during the relevant period. While Plaintiff healed from surgery prior to the relevant period, Dr. Vold advised Plaintiff against

any straining, lifting, and vigorous activity as such pressure could dislodge the shunt. Treatment notes from Dr. Vold during the relevant period, however, do not include a reiteration of these limitations, despite a notable 23-month gap in treatment. Instead, Dr. Vold provided a medical source statement in which he limited Plaintiff to continuous lifting or carrying of no more than just 10 lbs.

Further, Plaintiff reported inconsistent compliance with his medications—varying from always taking them to never taking them. As the record indicates a relationship between increased symptoms and lax medication compliance, Dr. Vold's treatment plan for Plaintiff included regular emphasis to take his medications and follow-up with his treatment.

Dr. Geren provided consultative examination reports regarding Plaintiff's visual impairments and resulting visual limitations. (ECF No. 12, pp. 368-369, 445-447). While he did not include an assessment of Plaintiff's work-related limitations based on these impairments, the record contains additional opinion evidence from both treating and examining medical sources regarding these limitations. The ALJ found the opinion from treating source Dr. Vold generally persuasive and accounted for that opinion in the RFC finding. Thus, the record contained sufficient evidence for the ALJ to make an informed decision, and the ALJ was not required to obtain additional evidence to fulfill her duty to develop a reasonably complete record.

**B.      The ALJ properly found Plaintiff's visual impairments did not meet or equal a listing.**

Plaintiff next contends that the ALJ failed to properly assess Plaintiff's visual impairments because she did not cite to specific portions of the record when she found that none of Plaintiff's impairments met or medially equaled the severity requirements of Listed Impairments 2.02, 2.03, and 2.04. The criteria are as follows:

2.02     Loss of Central Visual Acuity.  Remaining vision in the better eye after best correction is 20/200 or less.

2.03     Contraction of the visual field in the better eye, with:
A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees;
OR
B. An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d).
OR
C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).

2.04     Loss of visual efficiency, or visual impairment, in the better eye:
A. A visual efficiency percentage of 20 or less after best correction (see 2.00A7d).
OR
B. A visual impairment value of 1.00 or greater after best correction (see 2.00A8d).

20 C.F.R., Pt. 404, Subpt. P, App. 1.

Plaintiff insists that the ALJ should have contacted Dr. Vold or another consulting examiner to determine whether Plaintiff's impairments met or equaled the criteria of the relevant listings because the criteria are highly technical.

It is the claimant's burden to prove that his impairment meets or equals a listing.  *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  Whereas the ALJ considers evidence of a listed impairment and concludes whether the evidence of claimant's impairments meets or equals a listed impairment.  *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *Rife v. Berryhill*, 2017 WL 1362038, at *3 (W.D. Ark. April 7, 2017).  Even if the ALJ does not explicitly state the reasons a claimant failed to meet a listing, the ALJ's conclusion may be upheld when the record supports that conclusion.  *Id*.  The claimant bears the burden of demonstrating that his impairment matches all the specified criteria of a listing.  *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013).

Moreover, an ALJ is not required to provide a new medical evaluation for a claimant regarding the issue of medical equivalency. *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 978-979 (8th Cir. 2003). Rather, findings made by a physician designated by the Commissioner on the issue of equivalence may satisfy the requirement to receive expert opinion evidence into the record. *Id*. When a consulting doctor from a state agency responsible for disability determinations concludes that a claimant's condition does not meet a listing, the ALJ should treat that conclusion as expert opinion evidence. *Id*.

Here, the record supports the ALJ's conclusion that Plaintiff's visual impairments did not meet or equal the criteria of the relevant listings, especially when the consulting state agency physicians concluded the same. While Plaintiff states that the record contains two consultative examinations and nearly five years of treatment records, he does not refer or cite to any medical evidence proving that the criteria were met. Plaintiff insists that the relevant vision impairments are highly technical, and, thus, require more than the ALJ's observation. Indeed, the record contains two determinations from consulting state agency physicians that Plaintiff's visual impairments did not meet or equal a listed impairment: William Harrison, M.D., and Jerry Thomas, M.D., reviewed Plaintiff's record and both opined that no vision listing was met. (ECF No. 12, pp. 78-81, 93-96). In her decision, the ALJ stated that she considered the opinions of the state agency physicians. (*Id*., p. 27). Thus, the record supports the ALJ's determination that Plaintiff's visual impairments do not meet or medically equal a listing.

### C.     Substantial evidence supports the RFC finding.

For his third and fourth issues, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include additional limitations.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545. A disability claimant has the burden of establishing his RFC.  *Vossen*, 612 F. 3d at 1016.  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The evidence before the Court supports the ALJ's RFC determination.  A review of the record reveals effective control of symptoms with medication, lengthy periods without treatment, and no physician-placed restrictions during the relevant period.  Prior to the relevant period, Plaintiff's extensive history of treatment for visual impairments included procedures and operations based upon diagnoses of glaucoma in both eyes.

In June 2018, Dr. Geren conducted a consultative examination of Plaintiff finding 20/200 visual acuity in the left eye but 20/30 visual acuity in his right eye.  He had significant vision loss from glaucoma in both eyes, and Dr. Geren advised Plaintiff to follow up with Dr. Vold within a few weeks for additional treatments.  However, Plaintiff's first visit with Dr. Vold during the relevant period, in October 2018, revealed that Plaintiff had not been seen for treatment in 23 months.  Dr. Vold was the physician who diagnosed Plaintiff's visual impairments and performed

his surgeries, and the record indicates that he emphasized the importance of follow-up and compliance with medications. While testing and examination showed severe stage primary open-angle glaucoma of both eyes, pseudophakia in the right eye, and cortical cataract in the left eye, the treatment plan did not include activity restrictions. Medications were adjusted in response to Plaintiff's explanation that he was only generally compliant with medication reportedly due to some irritation to his eyelids as a side effect.

In November 2018, Dr. Vold completed a medical source statement assessing Plaintiff's work-related limitations based on diagnoses of primary open angle glaucoma and cortical cataract. Dr. Vold noted his treatment relationship with Plaintiff began in 2015. He stated that Plaintiff's condition had not prevented him from working for the past 12 months nor was it reasonably expected to last the next 12 months. As to limitations, Dr. Vold opined that Plaintiff could only occasionally be exposed to dust, fumes, and gases; he could frequently bend, squat, crawl, be around moving machinery, and drive automotive equipment; he could continuously be exposed to unprotected heights, marked temperature changes, and noise; he could continuously reach above his head, stoop, crouch, and kneel; and he could continuously lift and carry 10 lbs. or less.

Dr. Geren again assessed Plaintiff in May 2019, finding best corrected visual acuity of 20/30 in the right eye and hand motion in the left eye. He had moderate visual field loss in the right eye and almost total visual field loss in the left eye. While the left eye had very poor central vision, the right eye had good central vision. With medication, Plaintiff's intraocular pressure was stable in both eyes.

Plaintiff did not seek treatment with Dr. Vold again for nine months, at which time he reported increased symptoms—difficulties with dim lighting, glare, peripheral vision, and progressive loss of vision—and still only general compliance with medication. Dr. Vold adjusted

14

Plaintiff's medications again in response to reported side effects and discussed the risks and benefits of phacoemulsification with goniotomy of the left eye.  Plaintiff proceeded with the surgery, and, approximately one week later, reported good, fairly stable vision with no issues.  He also reported that he was always compliant with his medication.  As Plaintiff continued to report compliance with medication through September and October 2019, so too did he report good, fairly stable vision.

In November 2019, however, Plaintiff complained of increased symptoms—photophobia and poor vision—and admitted that he never took his medications as directed.  Testing indicated primary open-angle glaucoma with central corneal thickness within normal limits.  Dr. Vold advised Plaintiff to continue his medication, which was to be administered by dropping one drop into both eyes every night before bed.

In January 2020, Dr. Vold discussed the risks and benefits of selective laser trabeculoplasty of the right eye in response to Plaintiff's complaints that he was moderately bothered by burning and stinging that occurred when he complied with his medication regimen.  Plaintiff proceeded with the surgery and reported good, fairly stable vision 14 days later.  He reported that he used his medications as directed at that time.

Plaintiff reported the ability to do some household chores, including picking up around the living room, doing laundry, folding clothes, and dusting the countertops.  He alleged that he was blind in his left eye but reported that he could still drive sometimes.  Though he reportedly tripped while walking due to vision issues, he walked his son to school about 10 minutes away and took walks with his wife around the block.  His daily activities including visiting with his daughter, who lived next door, sitting around the house, and taking his medications.  While he could not read the labels on the shampoo and conditioner bottles, he could complete his personal care.  While he

15

reported that he could not tell when food was cooked, he explained that he had never cooked his own meals regardless of vision issues.

In her RFC finding, the ALJ limited Plaintiff to a reduced range of light work; no exposure to moving mechanical parts from the left; no jobs requiring use of both eyes or excellent vision; no bright light or sunshine; and jobs requiring only simple, routine, repetitive tasks and simple work-related decisions.

A review of the medical evidence shows a history of eye impairments requiring surgeries and medications but generally effective symptom control.  Albeit related to medication side effects at times, there is some evidence of noncompliance.  Even when treatment providers urged consistent follow-up in Plaintiff's medical circumstances, there is evidence of large gaps in treatment often followed by exacerbation of symptoms.  Additionally, Plaintiff's treating ophthalmologist provided limitations that considered Plaintiff's extensive history of ocular procedures and surgeries, including placement of a shunt in the right eye.  Limiting Plaintiff to continuous lifting or carrying of just 10 lbs. or less and limiting other strenuous postures demonstrate this consideration.  Dr. Vold also limited Plaintiff's exposure to hazards.  Finally, Plaintiff could complete personal care, do household chores, walk his son to school, take walks around the block, visit with his daughter who lived next door, and sometimes drive.  Accordingly, the record contains substantial support for the ALJ's RFC finding in this case.

> **D.      The ALJ properly evaluated Plaintiff's subjective statements.**

Finally, Plaintiff asserts that the ALJ failed to properly analyze Plaintiff's subjective complaints as required under *Polaski* and its progeny.  Part of the RFC determination includes consideration of a claimant's subjective statements regarding the intensity, persistence, and limiting effects of the alleged impairments.  An ALJ may discount subjective complaints of

16

physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Using the *Polaski* factors, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (noting *Polaski* factors must be considered before discounting subjective complaints).

In addition to the claimant's prior work record, the *Polaski* factors include: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *Polaski*, 739 F.2d at 1322; *see also* 20 C.F.R. § 404.1529. While an ALJ must consider these matters and give good reasons for discrediting a claimant's subjective complaints, she need not explicitly discuss each of these factors in depth. *See Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 1997). When an ALJ states that she discharged her official duties as stated in her decision, we presume she has done so. *See, e.g., Willburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described).

In her decision, the ALJ stated that she considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence. She further stated that she considered the claimant's subjective complaints of pain, the objective medical evidence, and any evidence relating to the claimant's daily activities; the duration, frequency, and intensity of the claimant's pain; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions.

17

The ALJ referenced the evidence she considered regarding Plaintiff's symptoms, including the ability to walk his son to school and take walks around the block despite complaints that he tripped due to vision problems.  Plaintiff also had a generally independent lifestyle, including regular attendance at church, shopping in stores, performing household chores, and preparing simple meals of sandwiches.  He did not seek treatment for lengthy stretches of time, from nine months to 23 months.  He irregularly complied with his medication regimen, but reported good, fairly stable vision when he did take his medicine.  The ALJ clearly considered Plaintiff's complaints of eye pain and sensitivity to light as she included limitations in the RFC finding explicitly based on Plaintiff's ocular impairments.  A review of the ALJ's decision reveals that she properly supported her finding regarding Plaintiff's subjective statements based on the medical and other evidence in the record.  As such, we cannot say that the ALJ erred in evaluating Plaintiff's subjective complaints.

Accordingly, the undersigned finds that the ALJ's decision to deny benefits in this case is supported by substantial evidence.

## V.    Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of January 2023.

/s/Mark E. Ford

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE